UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                    :        Chapter 13

REGINA PARKER                                            :

       Debtor                                   :        Bankruptcy No. 05-39420bf

................................................

MEMORANDUM

................................................

Ms. Regina Parker, the former chapter 13 debtor, has moved for the turnover of funds deposited by the chapter 13 trustee with the clerk of court pursuant to 11 U.S.C. § 347(a) and 28 U.S.C. § 2041.  See generally In re Georgian Villa, Inc., 55 F.3d 1561 (11th Cir. 1995); In re National Hosp. and Institutional Builders Co., 38 B.R. 727 (S.D.N.Y. 1984).  This request is opposed by Loan Care Servicing Center, acting on behalf of the former debtor's mortgagee.[1]

After an evidentiary hearing, see generally In re Scott, 346 B.R. 557 (Bankr. N.D. Ga. 2006), the following facts were proven.[2]

---

[1] A memorandum in opposition to the debtor's request is, however, submitted by Deutsche Bank Trust Company Americas.  Since no other party has affirmatively sought payment of these funds, I need only decide if the former debtor is entitled to these funds, and not whether Deutsche or Loan Care should receive them.  See generally In re Bouknight, 387 B.R. 337 (Bankr. D.D.C. 2008).

[2] Factual allegations asserted in memoranda or posthearing affidavits, but not proven at the hearing, have not been considered.

I.

This chapter 13 case was commenced on December 3, 2005.³ On February 6, 2007, Ms. Parker's second amended chapter 13 plan was confirmed. See docket entry #66.

Under the terms of this confirmed plan, as relevant to this contested matter, the former debtor agreed to pay $898 per month for 52 months beginning October 2006. The plan recites, though, that the debtor had previously paid to the trustee $2,100 through September 2006. The chapter 13 trustee was to distribute funds received under the confirmed plan, inter alia, to secured creditor Wendover Financial Services, until its prepetition mortgage arrearage of $36,407.41 was repaid. Finally, the plan provided that upon confirmation "title to all of the Petitioner(s) assets shall revest in the Petitioner(s)." Second Amended Chapter 13 Plan, ¶ 4.

On April 9, 2007, the chapter 13 trustee filed a motion to dismiss this case due to the former debtor's failure to tender required plan payments. See docket entry #68. On May 1, 2007, this bankruptcy case was dismissed. The order of dismissal (as requested by the chapter 13 trustee) stated in full:

> AND NOW, this day 1st day of May, 2007 upon consideration of the Motion to Dismiss filed by William C. Miller, Standing Trustee, this case is dismissed, and it is further ORDERED, that MICHAEL D. WARD ESQUIRE counsel for the debtor, shall file a master mailing list with the

---

³With the express agreement of the parties, I take judicial notice, under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of the docket entries, claims register and terms of the debtor's confirmed plan. I also take judicial notice of the dismissal order entered in this case. See generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

2

> clerk of the Bankruptcy Court, currently updated (if such has not been previously filed); and it is further
>
> ORDERED, that any wage orders are hereby VACATED.
>
> It is further ordered, pursuant to a consent decree signed by the debtor in February 2006, that the debtor is barred from filing future bankruptcy cases, either individually or jointly, without prior court approval.

No appeal was taken from this order.

On February 20, 2008, after this case had been dismissed, the trustee filed a final report regarding payments received and disbursements made. Ex. T-1; see docket entry #78. This report reveals that Ms. Parker had tendered a total of $5,692 to the trustee, from which the trustee paid himself $409.82 in commissions, paid $1,200 to debtor's counsel as an administrative expense, paid $707.11 to the City of Philadelphia on its secured claim, and paid $3,375.07 to the clerk of court. Ex. T-1.

The $3,375.07 paid into the court registry represented funds paid on "secured arrearages." Id. That is, after the former debtor's plan was confirmed, the chapter 13 trustee, William C. Miller, Esq., mailed a check to Wendover in the amount of $3,375.07 pursuant to the terms of the approved plan. The former debtor testified credibly that her mortgagee (or its agent) then sent her the original distribution check made payable by the chapter 13 trustee to Wendover, which check (as it was not made payable to her nor endorsed over to her) was forwarded by her back to the trustee.

This is consistent with the docket entries in this case, as they reflect that on January 14, 2008, the chapter 13 trustee deposited $3,375.07 into the court registry pursuant to 11 U.S.C. § 347(a). Docket entry 1/14/08.

3

I find that these deposited funds had been sent by the trustee to Wendover, which did not negotiate the trustee's check. I further find, based upon a preponderance of the evidence, that the $5,692 received by the trustee from Ms. Parker were paid prior to the date the plan was confirmed. I reach that conclusion because, under the confirmed plan, the debtor had promised to pay by the February 6, 2007 confirmation hearing $2,100 plus four monthly payments of $898, for a total of $5,692, which is the exact amount that the trustee had received.

Moreover, the trustee filed his dismissal motion in early April 2007, roughly two months after confirmation, due to Ms. Parker's failure to tender plan payments. As the standing trustee in this district generally does not file such a motion when a chapter 13 debtor is only one payment delinquent, it is likely that, by April 2007, Ms. Parker had failed to tender both the February and March 2007 payments due under her confirmed plan.

There was no evidence offered that revealed the date the trustee sent his distribution check to Wendover; nor evidence to explain the reason for Wendover's failure to negotiate the check and then to mail it to the debtor.

For purposes of resolving this contested matter, I find that the trustee made distribution to Wendover either prior to the entry of the dismissal order on May 1, 2007 or prior to the trustee's knowledge that such an order had been entered. Such conduct by the trustee would be consistent with the facts set forth in In re Mehan, III, 2000 WL 1010577 (Bankr. E.D. Pa. 2000), and Ms. Parker does not suggest otherwise.

As for Wendover's actions in refusing the distribution sent to it, there does appear to be a concern among mortgagees in this district that accepting partial payments

4

after a mortgage has gone into default would adversely affect their ability to foreclose. See generally In re Patton, 388 B.R. 629, 634 (Bankr. E.D. Pa. 2008) ("[M]ortgagees simply do not accept mortgage payments when the loan is in foreclosure."). This, plus an apparent misunderstanding that the funds were sent by the mortgagor rather than by a bankruptcy trustee, would account for Wendover's failure to accept partial payment from the trustee and forwarding the trustee's check to the former debtor.[4]

On August 11, 2008, the debtor requested that the funds deposited by the trustee with this court be paid to her. See docket entry #79. Loan Care Servicing Center now opposes this request, asserting that it represents the interests of an assignee from Wendover.[5]

II.

One court has summarized the statutory directives that bankruptcy trustees must follow when funds payable to creditors in a bankruptcy case go unclaimed:

> In a bankruptcy proceeding, after 90 days have elapsed from the time funds are distributed to creditors, any checks to creditors that have not been cashed are canceled and the funds represented by the checks are "paid into the [bankruptcy]

---

[4] Apparently though, the purported mortgagee no longer has a concern that accepting the funds deposited under section 347(a) would adversely affect its rights. Cf. Sellersville Savings and Loan Ass'n v. Kelly, 29 B.R. 1016 (E.D. Pa. 1983) (mortgagee's willingness to accept first two late payments does not estop it from later exercising its contractual foreclosure rights); Bankers Trust Co. of California v. Eaborn, 83 Pa. D. & C.4th 506, 510 (C.P., Allegh. Co. 2006) (mortgagee need not initiate a new foreclosure action after accepting less than the full amount of the default).

[5] The evidentiary hearing was held after numerous postponements requested, or agreed to, by the parties primarily to afford them a chance to resolve their dispute by agreement.

5

> court." 11 U.S.C. § 347(a) (2000). All such funds received by the bankruptcy court are "deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of [the] court." 28 U.S.C. § 2041 (2000). After five years, any funds that are still unclaimed are deposited by the bankruptcy court in the United States Treasury "in the name and to the credit of the United States." 28 U.S.C. § 2042 (2000). Thereafter, a creditor entitled to any of the funds may file a claim with the bankruptcy court, and if the claim is approved, the Treasury Department issues a check to the creditor in the principal amount of his or her distributive share. Id.

Leider v. United States, 301 F.3d 1290, 1293 (Fed. Cir. 2002).

While this court has subject matter jurisdiction to direct the turnover of unclaimed funds deposited into the court registry under section 347, it is not empowered to order that the funds deposited with this court be paid "as it sees fit, without regard either to the rights of the parties or to the applicable law." Alstom Caribe, Inc. v. George P. Reintjes Co., Inc., 484 F.3d 106, 114 (1st Cir. 2007). Instead, such funds paid into court are held in trust for those persons found rightfully entitled to them. See In re Johnson, 2008 WL 2338089, at *1 (Bankr. D.C. 2008); see generally In re Casco Chemical Co., 335 F.2d 645 (5th Cir. 1964); Wright & Miller, 12 Fed. Prac. & Proc. Civ.2d § 2992 (2008).[6] The burden is upon the claimant to establish proper ownership by a preponderence of the evidence. See Hansen v. U.S., 340 F.2d 142, 144 (8th Cir. 1965); In re Johnson, 2008 WL 2338089, at *1.

In this contested matter, the former debtor contends, through her counsel, that she is entitled to receive these funds since they were paid by her to the trustee. Loan Care Servicing Center maintains, through its counsel (and supported by the chapter 13

---

[6]Therefore, evidence presented by the former debtor of her need for these funds is not germane to her right of entitlement.

6

trustee) that the funds were distributed to the former debtor's mortgagee pursuant to the terms of a confirmed plan, and so only the mortgagee is entitled to receive those funds.

The debtor bases her entitlement to the funds deposited with this court on the provisions of 11 U.S.C. § 349(b)[7], and upon the failure of Wendover to accept the funds when distributed to it. Loan Care Servicing Center counters that sections 1326 and 1327 render the terms of a confirmed plan binding upon the trustee, the debtor and all creditors, and thus vests in the mortgagee a right of entitlement to those funds paid by the debtor to the trustee that are directed by the plan to be distributed to this secured creditor.

---

[7]Section 349(b) states:

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title--

(1) reinstates–

    (A) any proceeding or custodianship superseded under section 543 of this title;

    (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

    (C) any lien voided under section 506(d) of this title;

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

Specifically, 11 U.S.C. § 1326(a)(2)[8] directs that a chapter 13 trustee shall retain plan payments made by the debtor prior to confirmation until the debtor's proposed chapter 13 plan is either confirmed or denied. If denied, "the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b)." If confirmed, "the trustee shall distribute any such payment in accordance with the plan as soon as is practicable." Thus, once the debtor's plan was confirmed on February 6, 2007, the chapter 13 trustee was obligated to distribute the funds he had previously received from the debtor according to the plan provisions.[9] Here, payment was sent to Wendover on its secured claim from such retained funds.

Once a chapter 13 case is dismissed, the bankruptcy stay is ended by virtue of section 362(c). See Montelione v. Federal Nat. Mortg. Ass'n, 183 Fed. Appx. 200, 201 (3d Cir. 2006) (non-precedential). Furthermore, section 349(b)(3) provides that dismissal "revests the property of the estate in the entity in which such property was vested

---

[8]This subsection provides:

2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

[9]The more general provisions of section 1326(c) direct the standing chapter 13 trustee to tender postconfirmation distributions to creditors unless the plan or confirmation order provide otherwise. This statutory provision has been construed by some courts as permitting a chapter 13 debtor to make payments directly to creditors after confirmation, if the chapter 13 plan so authorizes. See, e.g., Matter of Mendoza, 111 F.3d 1264, 1269 (5th Cir. 1997); In re Lopez, 372 B.R. 40, 52 (B.A.P. 9th Cir. 2007), aff'd, 2008 WL 5382337 (9th Cir. 2008).

immediately before the commencement of the case under this title," unless otherwise ordered by the court. Thus, property of a chapter 13 bankruptcy estate reverts back to the chapter 13 debtor unless the dismissal order provided otherwise. See In re Lewis, 2006 WL 562970, at *1 (E.D. Pa. 2006). Furthermore, dismissal renders the former debtor no longer obligated to tender plan payments, and frees her creditors and the bankruptcy trustee from any compliance with the terms of the confirmed plan. See In re Parrish, 275 B.R. 424, 433 (Bankr. D.D.C. 2002).

The narrow question posed by this contested matter is the effect of dismissal upon funds paid to the chapter 13 trustee prior to confirmation and then retained by the trustee after confirmation because a secured creditor has not accepted them.[10]

The former debtor's position—that such funds are payable to her—may be supported by one commentator:

> As discussed above in the context of conversion from Chapter 13 to Chapter 7, after dismissal of a Chapter 13 case, there are often funds held by the Chapter 13 trustee or in transit to the trustee, which were deducted from the debtor's income and were intended for distribution under the plan. In the dismissal context, it has been held that a voluntary dismissal vacates the confirmed Chapter 13 plan and immediately relieves the trustee of authority or responsibility to make payments under the plan. <u>Funds that are in the hands of the trustee—whether received before or after dismissal of the Chapter 13 case—belong to the debtor and should not be distributed to creditors.</u> If the trustee distributes funds to creditors after dismissal of the Chapter 13 case, it has been held that the trustee may be surcharged for return of the funds.

---

[10]Ms. Parker acknowledged at the hearing that distributions received by creditors from the trustee need not be disgorged even if the case is subsequently dismissed. See 3 Collier on Bankruptcy, ¶ 349.03[1] (15th ed. rev. 2008).

7 Norton Bankruptcy Law & Practice 3d, § 148:6 (2008) (footnotes omitted) (emphasis added).[11]

This commentary is based largely upon a Ninth Circuit Court decision, In re Nash, 765 F.2d 1410, 1413-14 (9th Cir. 1985). See also In re Slaughter, 141 B.R. 661 (Bankr. N.D. Ill. 1992). Both Nash and Slaughter interpreted section 349(b)(3) as requiring that funds still held by a chapter 13 trustee after confirmation be repaid to the former chapter 13 debtor upon dismissal of the case.

This statutory interpretation, however, was rejected by the court in In re Parrish, 275 B.R. 424 (Bankr. D.D.C. 2002), which construed the express language of section 1326(a)(2) as taking precedence over the more general language of section 349(b), particularly as the latter lists certain orders that are vacated upon dismissal but does not include the order of confirmation.[12]

---

[11]This same commentator also stated though:

> Payments to the trustee pursuant to Code § 1326(a)(1) are to be held by the trustee until a plan is confirmed or confirmation is denied. As provided in § 1326(a)(2), the trustee must apply the funds to a confirmed plan, but if a plan is not confirmed, the funds must be returned to the debtor after deduction of any unpaid administrative expenses allowed under Code § 503(b).

7 Norton Bankruptcy Law & Practice 3d, § 145:6 (2008).

[12]The Parrish court also distinguished the specific provisions of section 1326(a)(2) from the more general language of section 1326(c):

> The court of appeals correctly concluded that [section 1326(c)] simply designated the trustee as the disbursing agent in default of any other provision providing otherwise, and did not address whether the trustee was required to disburse funds in accordance with the plan after dismissal. Nash, 765 F.2d at 1413 n. 1. Here, in contrast, § 1326(a)(2) does apply, and does specifically direct

(continued...)

The court in In re Tran, 309 B.R. 330 (B.A.P. 9th Cir. 2004), aff'd, 177 Fed. Appx. 754 (9th Cir. 2006), however, recognized a distinction in section 1326(a)(2) that is germane to this contested matter.[13] In Tran, the dispute concerned the disposition of proceeds of a loan refinancing that the chapter 13 debtor obtained postconfirmation. The Tran court held, consistent with Nash, that those funds received by the trustee only after confirmation and not distributed at the time of dismissal are repayable to the debtor unless the dismissal order provides otherwise.

In reaching this conclusion, however, the Bankruptcy Appellate Panel observed that funds received by a chapter 13 trustee prior to confirmation are governed by the express language of section 1326(a)(2), while funds paid by the chapter 13 debtor after confirmation are not. Id., 309 B.R. at 336 ("'By its terms, § 1326(a(2) does not pertain to funds received by a trustee *after* confirmation of a Chapter 13 plan.'") (quoting In re Boggs, 137 B.R. 408, 410 (Bankr. W.D. Wash. 1992) (emphasis in original)). While the funds at issue in Tran were paid to the chapter 13 trustee after confirmation, this

---

[12](...continued)
disbursement of the funds received after confirmation of a plan in accordance with the confirmed plan, and makes no exception for a dismissed case.

In re Parrish, 275 B.R. at 428 n.4.

[13]I find In re Cox, 381 B.R. 525 (Bankr. E.D. Tenn. 2008), distinguishable. Although that court held that the proceeds of pre-bankruptcy litigation settled postconfirmation did not revest in the debtor upon dismissal, the dismissal order expressly so provided. Id., 381 B.R. at 527, 528. Here, the trustee's proposed dismissal order did not address the disposition of funds paid by the debtor to the trustee.

I also find inapposite those decisions considering the proper disposition of funds held by a chapter 13 trustee when a case is converted to chapter 7, because those decisions must consider the provisions of section 348 rather than section 349. See In re Slaughter, 141 B.R. at 662-63.

decision implicitly recognized that funds received and retained by the trustee prior to confirmation are directed by section 1326(a)(2) to be paid "in accordance with the plan as soon as practicable." Such retained funds are distinguishable from funds received by the trustee postconfirmation.

To the extent that this contested matter requires one to harmonize the provisions of section 1326(a)(2) and section 349(b)(3), I agree with the Parrish court that Congress intended that the right to payment of those funds retained by a trustee under section 1326(a)(2), pending confirmation, vests in creditors as soon as the proposed plan is confirmed. There may be, as in Ms. Parker's case, a considerable delay between the commencement of plan payments to the trustee under section 1326(a)(1) and the date a plan is confirmed. From the language of section 1326(a)(2), it appears that Congress determined that creditors were entitled to receive those substantial funds upon court approval of the chapter 13 plan. After confirmation, however, a trustee will typically make distributions under the plan on a regular basis, so that dismissal will generally leave fewer post-confirmation payments undistributed.

Accordingly, the general provision of section 349(b)(3) may govern post-confirmation payments held by a chapter 13 trustee upon dismissal. It does not, however, undermine the rights of creditors to funds paid pre-confirmation as specified in section 1326(a).[14]

---

[14] Indeed, I note that the Nash and Slaughter decisions both involved disputes over post-confirmation payments received and held by the chapter 13 trustee at the time of dismissal, and did not concern pre-confirmation payments made to the trustee. Furthermore, the Nash court considered a version of section 1326 that differs from the present version. See In re Tran, 309 B.R. at 335. The language of section 1326(a)2) was added in 1984. See Pub. L. 98-353, § 318(a)(2).

Therefore, Ms. Parker has not demonstrated her right to the unclaimed funds deposited in this case under section 347(a) based, as she contends, upon section 349(b).

### III.

Finally, Ms. Parker maintains that Wendover's rejection of its distribution from the trustee renders her entitled to turnover of the funds deposited in the court registry. I find this contention also unpersuasive.

The former debtor suggests that in mailing the trustee's check to her, Wendover gave her those funds. This argument overlooks that Wendover did not endorse the trustee's check over to her. Instead, it wrongfully assumed that she was the sender of the funds; and, as a result, the rejected distribution remained in the trustee's account, thereby triggering the provisions of section 347(a).

Whether Wendover, or its assignee, is now entitled to those funds is not presently before me. Cf. In re Bacon, 274 B.R. 682 (Bankr. D. Md. 2002) (payments returned to the chapter 13 trustee by secured creditors whose claims had been repaid via refinancing must be distributed to unsecured creditors). On the limited facts proven at the evidentiary hearing, I conclude though that there is no evidence that Wendover assigned its right to payment under section 1326(a)(2) to the former debtor, either by its failure to negotiate the trustee's check or by its mailing that unendorsed check to the former debtor.

Accordingly, Ms. Parker's motion to receive the funds deposited in the court registry must be denied. An appropriate order will be entered.

*Bruce Fox*
_____
BRUCE FOX
United States Bankruptcy Judge

Dated: January 21, 2009